STATE OF RHODE ISLAND
WASHINGTON, SC.

SUPERIOR COURT

MILTON SALOMON and :
BETTY SALOMON :
:
vs. : W.C. NO. 06-317
:
EVAN BLUM :

**COMPLAINT**

Plaintiffs Milton and Betty Salomon (collectively the "Salomons") state their Complaint against the Defendant Evan Blum ("Blum") as follows.

1. The Salomons are husband and wife. They currently reside in Narragansett, Rhode Island. Mr. Salomon is ninety-one years old while Mrs. Salomon is eighty-four years old.

2. The Salomons also own certain real estate located in Hopkinton, Rhode Island commonly known and numbered as 222 Alton Bradford Road and also designated as Lot 35 on Hopkinton Tax Assessor's Plat 6. This property (Alton Bradford Road) is the subject matter of this case and will hereinafter be referred to as the Property. The Property is comprised of approximately twenty acres and includes a house where the Salomons made their home for over thirty years.

3. Blum owns certain real estate adjacent to the Property. Blum's real estate is commonly known and numbered as 206 Alton Bradford Road and is also designated as Lot 34A on Hopkinton Tax Assessor's Plat 6.

4. The Salomons decided to sell the Property during the week of July 31, 2005. Mr. Salomon was hospitalized at South County Hospital in Wakefield, Rhode Island during the time period August 1, 2005 through August 5, 2005, and it had become apparent that the Property was simply "too much" for the Salomons. Therefore, the Salomons decided to sell 222 Alton Bradford Road and buy a condominium, which would have required far less upkeep and effort on their part.

5. At that time, the Salomon's daughter, Deborah Salomon ("Deborah"), was visiting them from California. On either Sunday, August 7, 2005, or Monday, August 8, 2005, Deborah told Blum him that Mr. Salomon was ill and that her parents were planning to sell the Property. Blum expressed an interest in acquiring the Property and Deborah communicated this to her parents. Despite the foregoing, the Salomons had no discussions with Blum about the Property until September, 2005, as discussed further below.

6. During the time period August 25, 2005 through September 5, 2005, the Salomons decided, after discussing the matter with their children, to ask for $850,000.00 for the Property and and to solicit interest from various family

friends who were familiar with the Property. To this end, their children helped the Salomons put together a "solicitation" as attached hereto as **Exhibit 1.** This "solicitation" stated, in part, that "[b]efore we hire a real estate agent, we will directly accept serious offers. After two appraisals, the price we have settled on is $850,000.00. If you are interested, please let us know." The Salomons sent this solicitation to two family friends by e-mail on September 7, 2005.

7. On September 12, 2005, Blum came to visit the Salomons and expressed an interest in buying the Property to them. Mrs. Salomon showed him the solicitation **(Exhibit 1)** and Blum said that he would buy the Property and that the Salomons should not solicit any other people.

8. On September 20, 2005, the Salomons' attorney, Victor Orsinger ("Orsinger"), sent Blum a proposed purchase and sale agreement by electronic transmission. A copy of this transmission is attached hereto as **Exhibit 2**.

9. On September 21, 2005, Orsinger received a lengthy reply from Blum by electronic transmission. This reply is attached hereto as **Exhibit 3**.

10. On September 21, 2005, Orsinger sent a revised purchase and sale agreement to Blum by electronic transmission on September 21, 2005. A copy of this transmission is attached as **Exhibit 4**.

11. Both **Exhibits 2 and 4** contemplate a purchase price of $850,000.00; however, during the time period September 26, 2005 through September 29, 2005,

Blum spoke with David Salomon (the son of Milton and Betty Salomon). Basically, Blum wanted to reduce the price to $800,000.00 since there was no broker involved. However, Orsinger sent Blum an electronic transmission, attached hereto as **Exhibit 5**, on September 28, 2005, to discuss the proposed price concession and to point out that "our contract price of $850,000.00 was established in the context of no broker involvement." Orsinger also suggested that the Salomons might actually ask for as much as $900,000.00 if the property went back on the open market through a broker.

12. Blum finally agreed to pay the sum of $825,000.00 for the Property with a closing to occur on or before December 30, 2005 and with no financing contingency.

13. Blum signed the final purchase and sale agreement in Orsinger'soffice in Westerly, Rhode Island on October 3, 2005. The Salomon countersigned the agreement in Orsinger's office later that same day or on the next day. A copy of the purchase and sale agreement, as executed by all of the parties, is attached hereto as **Exhibit 6**.

14. On October 11, 2005, Orsinger sent Blum an electronic transmission inquiring after the deposit that he was supposed to pay. A copy of this transmission is attached as **Exhibit 7**.

15. Later, that same day, Orsinger received a fax transmission from an attorney in New York, one Michael Shanker ("Shanker"), enclosing a check dated October 11, 2005 for $82,500.00, being Mr. Blum's deposit. The check was written on Shanker's IOLTA account. A copy of this fax transmission (including check) is attached hereto as **Exhibit 8**. The deposit check from Shanker was received by Orsinger on or about October 14, 2005.

16. On December 17, 2005, Orsinger sent Blum an electronic transmission requesting a firm closing date and asking the name of Blum's title attorney. A copy of this fax transmission is attached hereto as **Exhibit 9**.

17. On December 19, 2005 Orsinger received an electronic transmission from Blum stating that he was "working day and night at the Ocean House" and that "I will talk to you shortly." A copy of this electronic transmission is attached hereto as **Exhibit 10**. (On information and belief, Blum is in the business of retrieving decorative pieces and artifacts from older buildings. Blum was working to retrieve such pieces from the Ocean House, which was a "grand hotel" built in Watch Hill, Rhode Island, early in the twentieth century, and which was being demolished.)

18. On December 22, 2006, Blum called Orsinger to say that he had received an appraisal for the Property for $450,000.00. Orsinger pointed out to

Blum that he had agreed to pay $825,000.00. Blum suggested that he no longer wished to pay that much money.

19. On December 24, 2005, Orsinger sent Mr. Blum an electronic transmission advising that the Salomons intended to proceed as agreed but offering to extend the closing date. Orsinger also forwarded a proposed extension agreement to him. A copy of this transmission (including the extension agreement) is attached hereto as **Exhibit 11**.

20. On December 27, 2005, Blum came to the Salomons' condominium (acquired by them in October) in order to tell the Salomons that they "had a problem" or words to that effect. Mr. Salomon replied "No, you (Blum) have a problem."

21. On December 29, 2005, Orsinger sent two fax transmissions to Mr. Blum's title counsel, John Gentile ("Gentile"), enclosing the proposed closing documents together with the proposed extension agreement. Copies of both transmissions are attached hereto as **Exhibit 12** together with the documents discussed therein, as signed by the Salomons.

22. On December 30, 2005, Orsinger received a letter from Gentile rejecting the extension agreement, demanding the return of the deposit paid by Blum, and suggesting a meeting as early as January 4, 2006. Orsinger replied to

Gentile by letter of even date. Copies of both letters are attached hereto marked respectively as **Exhibits 13** and **14**.

23. On January 4, 2006, Blum and Gentile came to Orsinger's office in Westerly, Rhode Island to meet with Orsinger and the Salomons. At that meeting, Blum proposed paying the Salomons the sum of $625,000.00, with $450,000.00 down and with the balance to be paid in one year. Orsinger sent Gentile a letter on the same day, a copy of which is attached hereto as **Exhibit 15.** In that letter, Orsinger acknowledged the terms of Blum's proposal, reported to Gentile that the proposal had been rejected by the Salomons, and advised Gentile that the Salomons would consider Blum to be in default and would seek remedies for that default.

24. At the January 4, 2006 meeting, Gentile advised Orsinger that he was referring Blum to another attorney, Vincent Naccarato ("Naccarato"), in the event of any litigation. Subsequently, Orsinger received a letter, dated January 26, 2006, from Naccarato, a copy of which is attached hereto as **Exhibit 16**. Naccarato stated that he represented Blum and demanded that Orsinger release the deposit paid by Blum. He also threatened to file suit in this Court on behalf of Blum.

25. On February 7, 2006, the undersigned sent a letter to Naccarato advising that Orsinger would hold the deposit paid by Blum pending resolution

of any issues between the parties. The undersigned also advised that the Salomons planned to retain a broker to market the price with an initial asking price of $850,000.00. A copy of this letter is attached hereto as **Exhibit 17**.

**Count I (Breach of Contract)**

26. The Salomons incorporate paragraphs 1 through 25 of this Complaint by reference.

27. Blum breached his contract (**Exhibit 6**) with the Salomons.

28. The Salomons are entitled to retain the deposit paid by Blum and to otherwise pursue other remedies, including a claim for compensatory damages, against Blum.

**Count II (Declaratory Judgment)**

29. The Salomons incorporate paragraphs 1 through 28 of this Complaint by reference.

30. The Salomons are entitled to a declaration of their rights pursuant to **Exhibit 6**.

**Count III (Injunctive Relief)**

31. The Salomons incorporate paragraphs 1 through 30 of this Complaint by reference.

32. The Salomons are entitled to injunctive relief to protect their rights in and to the Property from Blum's unwarranted demands.

Wherefore, the Salomons pray for judgment as follows:

1. Declare the rights and obligations of the parties pursuant to **Exhibit 6**;

2. Declare that they are entitled to retain the deposit paid by Blum pursuant to **Exhibit 6**;

3. Order Blum to pay compensatory damages to them in an amount in excess of the jurisdictional requirements of this Honorable Court, together with interest thereon;

4. Grant injunctive relief, as may be appropriate, during the course of this matter to protect their rights in and to the Property;

5. Grant to them an award of attorney's fees, pursuant to either statute or common law;

6. Grant such other relief, either in law or equity, as this Court deems fair and just.

Plaintiffs Milton Salomon and Betty Salomon,
By their Attorney,

Barry J. Kusinitz, Esq. (#1404)
155 South Main Street, Suite 405
Providence, RI 02903
Tel: 401.831.4200
Fax: 401.831.7053
E-Mail: bkusinitz@bdglawyers.com

DATED: May 23, 2006